IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEDA A. BASS, | ) | |
|       Plaintiff | ) | C.A. No. 11-308 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| UPMC HORIZON, et al., | ) | |
|       Defendants. | ) | |

**OPINION AND ORDER**

United States Magistrate Judge Susan Paradise Baxter[1]

## I. INTRODUCTION

### A. Relevant Procedural History

Plaintiff brings this action against Defendants UPMC Horizon ("UPMC"), and UPMC Benefit Management Services, Inc., d/b/a UPMC WorkPartners ("UPMC WorkPartners"), alleging disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq*. ("ADA"). Specifically, Plaintiff claims that Defendant UPMC failed to provide reasonable accommodations for her disability and refused to comply with her treating physician's work restrictions, which allegedly caused her to suffer a medical emergency and hospitalization on October 27, 2010. Plaintiff alleges further that Defendant UPMC WorkPartners wrongfully denied her claim for disability benefits for the period of time she was disabled from employment following her hospitalization. As relief for her claims Plaintiff seeks injunctive relief and monetary damages, including recovery of medical expenses, lost wages, lost benefits, and compensatory and punitive damages.

---

[1] The parties have consented to the United States Magistrate Judge's exercise of jurisdiction over this matter. [ECF Nos. 8, 12

1

Defendants have filed a motion for summary judgment [ECF No. 24], contending that Plaintiff cannot establish a *prima facie* case of disability discrimination under the ADA, and that Plaintiff's claim for short-term disability benefits fails as a matter of law because she did not exhaust her administrative remedies under UPMC's Short-Term Disability Plan. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 30], and Defendants have filed a reply brief [ECF No. 31]. This matter is now ripe for consideration.

### B. Relevant Factual History[2]

Plaintiff is currently employed by UPMC as a medical technologist ("MT"), and has worked at the same hospital/location since 1986. (ECF No. 27, Defendants' Concise Statement of Material Facts, ¶¶ 1, 2). At all times relevant to Plaintiff's claims, her immediate supervisor has been Edward Castor ("Castor"), UPMC's Director of Laboratory Services. (Id. at ¶¶ 14, 15).

UPMC has two medical facilities/campuses – one facility is located in Greenville, Pennsylvania ("Greenville") and the other is located in the Shenango Valley ("Shenango"). (Id. at ¶ 3). During her entire employment as an MT at UPMC, Plaintiff has been based at the Greenville campus. (Id. at ¶ 4). MTs based at the Greenville campus are generally required to work shifts at the Shenango campus once or twice a month. (Id. at ¶ 6).

---

[2] The factual history set forth herein is gleaned from Defendants' Concise Statement of Undisputed Material Facts [ECF No. 27], which has not been opposed by Plaintiff in a separate concise statement of material facts. Pursuant to Local Civil Rule 56E, material facts set forth in a party's Concise Statement of Material Facts, which are claimed to be undisputed, will be deemed admitted for purposes of deciding a motion for summary judgment, unless such facts are specifically denied or otherwise controverted by a separate concise statement of the opposing party. See United States of America *ex rel.* Paranich v. Sorgnard, 396 F.3d 326, 331 n. 5 (3d Cir. 2005)(citing M.D.Pa. L.R. 56.1, which is essentially identical to our District's Local Civil Rule 56E). The Court notes that Defendants' reply brief, dated December 3, 2012, put Plaintiff and her counsel on notice of the effect of Local Civil Rule 56E, yet Plaintiff has still failed to file a separate statement of facts in opposition to Defendants' statement. Accordingly, this Court deems Defendants' statement of material facts, which are claimed to be undisputed, as admitted.

MTs' schedules are distributed two weeks before the first day of each month and reflect the MTs' assigned shifts for a four week period. (Id. at ¶ 8). On each schedule, the term "SV" indicates that the MT is assigned to work at the Shenango campus, while the term "GR" indicates that the MT is scheduled to work at Greenville. (Id. at ¶ 9). If the schedule does not indicate either an "SV" or "GR," the MT is scheduled to work at Greenville. (Id. at ¶ 10). Plaintiff lives approximately 26 miles from the Greenville campus, while it takes her a little over an hour to get to the Shenango campus. (Id. at ¶¶ 12, 13).

Plaintiff worked at the Greenville campus on May 15 and 16, 2010. (Id. at ¶ 16). On May 17, 2010, Plaintiff's husband drove her to Pittsburgh for a routine, annual gynecological appointment at Magee Women's Hospital. (Id. at ¶ 17). During the appointment, Plaintiff's blood pressure was elevated and she complained of chest pain, which led to her referral to the emergency room for examination. (Id. at ¶ 18). Due to this hospital visit, Plaintiff was excused from work on May 17 and 18, 2010. (Id. at ¶ 19).

On May 20, 2010, as a follow-up to her emergency room visit, Plaintiff was seen by her primary care physician, Dr. Marianne Suprys, who diagnosed Plaintiff with labile hypertension, which causes Plaintiff's blood pressure to elevate quickly. (Id. at ¶¶ 21, 22). During this appointment, Plaintiff told Dr. Suprys that her elevated blood pressure on May 17, 2010, was caused by stress from the extra driving related to her work, even though nothing in the Plaintiff's emergency room medical records suggested that there was any connection between Plaintiff's work travel and her elevated blood pressure on that date. (Id. at ¶¶ 23, 24). Nonetheless, based on Plaintiff's representation, Dr. Suprys concluded that the episode on May 17 was caused by Plaintiff's work and provided Plaintiff with a slip that stated, "[p]lease allow my patient an eight hour day restriction in the Greenville Hospital for her normal shift." (Id. at ¶¶ 24, 25). This was the first time Dr. Suprys had placed any restrictions on Plaintiff. (Id. at ¶26). Dr. Suprys subsequently provided Plaintiff slips dated June 15, 2010, and July 6, 2010,

stating the identical restrictions as those indicated in the May 20, 2010 slip. (Id. at ¶ 27).

Dr. Suprys has testified that the work restrictions placed upon Plaintiff were based upon Plaintiff's representations that driving to work at the Shenango campus and working in excess of eight hours caused her stress and elevated her blood pressure. (Id. at ¶ 29). Dr. Suprys has also acknowledged that Plaintiff's medical condition is associated with her being overweight. (Id. at ¶ 30). Except for the limitation of confining her work to eight-hour shifts at UPMC's Greenville facility, Plaintiff's labile hypertension condition does not restrict her ability to perform her job. (Id. at ¶ 31).

After Plaintiff provided Defendant UPMC with the slips from Dr. Suprys containing her work restrictions, she was told that she was not required to work at the Shenango campus. (Id. at ¶ 33). Since May 20, 2010, Plaintiff has never worked at Shenango, nor has she been required to work more than eight hours per shift. (Id. at ¶¶ 36, 37). However, due to the temporary nature of Plaintiff's restrictions and the fact that work schedules were posted at least two weeks before the first day of each 30-day period covered by the schedule, Plaintiff was occasionally scheduled to work at Shenango after May 20, 2010. On such occasions, the schedules were changed to accommodate Plaintiff's restriction, and Plaintiff was so informed, with one notable exception. (Id at ¶ 34).

This exception occurred in connection with the work schedule for the period from October 24, 2010 through November 20, 2010, which was prepared and posted on or about October 9, 2010. (Id. at ¶ 48). Castor noticed that this work schedule had Plaintiff assigned to work at Shenango on October 27, 2010, so he instructed the schedule preparer to make a red-ink change to that assignment and assumed that Plaintiff would be notified of the change. (Id. at ¶ 49). However, due to miscommunication, Plaintiff was not informed of the schedule change and went to work her shift at Shenango on October 27, 2010. (Id. at ¶ 51). Castor was at Shenango on October 27, 2010, when Plaintiff arrived for work. He apologized to Plaintiff for

4

the scheduling miscommunication and advised her to clock in so she would get paid for her time, but to return to Greenville to complete her shift there. (Id. at ¶ 52). Plaintiff returned to Greenville, as instructed, but later that day went to the hospital complaining of chest pains and having an elevated blood pressure. (Id. at ¶¶ 53, 54).

On November 8, 2010, Plaintiff notified Defendant UPMC WorkPartners that she needed a leave of absence for her health condition beginning on October 29, 2010. (Id. at 55). Plaintiff was subsequently granted a leave of absence from October 27, 2010 until December 21, 2010. (Id. at ¶ 56). While Plaintiff was on leave from work, Defendant UPMC WorkPartners opened a Short Term Disability ("STD") benefit claim for her; however, Plaintiff was later informed by letter dated December 21, 2010, that her request for STD benefits was denied based upon a medical review of her claim. In addition, Plaintiff was advised of her right to appeal the denial of her claim. (Id. at ¶¶ 58, 59). Although Plaintiff was aware of her appeal rights, she chose not to file an appeal. (Id. at ¶ 60). When Plaintiff returned to work after her leave of absence she was still restricted to working only at Greenville and for only eight hours a day. (Id. at ¶ 62). These restrictions have been accommodated since her return. (Id. at ¶ 63).

### C. Standard of Review

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond,

summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are

any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### D. Discussion
#### 1. Disability Discrimination

Plaintiff claims that Defendants failed to reasonably accommodate her disability as required by the ADA.

"Under the ADA, employers are prohibited from discriminating 'against a qualified individual with a disability because of the disability of such individual in regard to … terms, conditions, and privileges of employment.'" Taylor v. Phoenixville School Dist., 184 F.3d 296, 305 (3d Cir. 1999), citing 42 U.S.C. § 12112(a).

To establish a *prima facie* case of discrimination in a "failure to reasonably accommodate" claim, a plaintiff must demonstrate that: (i) she is "disabled" as defined by the ADA; (ii) the employer had notice of the disability; (iii) she can perform the essential functions of her position with a reasonable accommodation; and (iv) the employer failed to provide a reasonable accommodation. See Johnson v. McGraw-Hill Cos., 451 F.Supp.2d 681, 701 (W.D.Pa. 2006) (citations omitted).

7

Here, Defendants argue that Plaintiff cannot establish a *prima facie* case of discrimination because she cannot meet either the first or fourth prong. In particular, Defendants assert that Plaintiff cannot prove that she is disabled within the meaning of the ADA, and is unable to show that Defendants failed to provide reasonable accommodations. These arguments will be addressed in reverse order, as they are presented by Defendants.

### a. **Reasonable Accommodation**

An employer discriminates against a qualified individual with a disability when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A). "Reasonable accommodation" means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices,… and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

At the outset, the Court notes that Plaintiff has acknowledged that Defendants accommodated her claimed disability after she returned to work from her leave of absence on or about December 21, 2010. (See ECF No. 27, Defendants' Concise Statement of Material Facts, at ¶¶ 60-61). As a result, the only period of time in question during which Plaintiff claims Defendants failed to provide her with reasonable accommodations is from May 20, 2010 (when she first requested her accommodations) through October 27, 2010 (the last day Plaintiff worked before her leave of absence).

The record is clear that the only accommodations requested by Plaintiff are that her shifts be confined to eight hours and that she be required to work only at the Greenville facility. (ECF No. 27, Defendants' Concise Statement of Material Facts, at ¶ 32). Plaintiff has acknowledged

that she is otherwise fully capable of performing her job functions, without restriction. (Id. at ¶ 31). Plaintiff has further acknowledged that she was never required to work more than eight hours per shift after May 20, 2010. (Id. at ¶ 37). Thus, the only issue remaining is whether Defendants failed to accommodate Plaintiff's request that she be required to work only at UPMC's Greenville facility between the dates of May 20, 2010 and October 27, 2010.

In this regard, Plaintiff cannot recall any occasion on which she was **required** to work at the Shenango campus after May 20, 2010. (Id. at ¶ 33). In fact, the undisputed testimony of Defendants' supervisory staff members Brian Durniok, Cindy Addison, and Castor, establishes that Plaintiff was never required to work a single shift at Shenango since she first provided a doctor's slip containing her restrictions. (Id. at ¶ 36). The only incident Plaintiff cites in support of her claim that Defendants failed to accommodate her is the one that occurred on October 27, 2010, when Plaintiff traveled to Shenango to work her scheduled shift based upon the work schedule that was posted on October 9, 2010. This schedule originally indicated that Plaintiff was to work at Shenango on October 27; however, the undisputed facts indicate that the schedule was changed at Castor's request to accommodate Plaintiff's restrictions, but, due to a miscommunication, the change was never conveyed to Plaintiff. (Id. at ¶¶ 51-52). Thus, the fact that Plaintiff felt compelled to report to work at Shenango on October 27, 2010, does not establish that Defendants failed or refused to accommodate her. Rather, Plaintiff's travel to Shenango on that date was merely the unfortunate consequence of Defendants' communication error. This conclusion is buttressed by the fact that, upon seeing Plaintiff report to work at Shenango, Castor immediately recognized the error, apologized to Plaintiff, and then instructed her to return to Greenville to work her shift there in accordance with her restrictions.

In short, the overwhelming weight of the evidence of record shows that Defendants did, in fact, provide reasonable accommodations for Plaintiff's claimed disability between the dates of May 20, 2010 and October 27, 2010. As a result, Plaintiff has failed to establish a *prima facie*

9

case of disability discrimination based upon a failure to accommodate her claimed disability, and summary judgment will be entered on such claim in favor of Defendants accordingly.[3]

## 2. Short Term Disability Benefits Claim

Plaintiff asserts that Defendants wrongfully denied her claim for short term disability benefits during her leave of absence. Defendants contend that this claim fails as a matter of law because Plaintiff failed to exhaust her plan appeal procedures in accordance with Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Section 502(a)(1)(B) provides that a participant or beneficiary of a plan may bring a civil action "to recover benefits due to [her] under the terms of [her] plan, enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." The Third Circuit has held that ERISA's claim and appeal procedures must be exhausted by a plaintiff as a condition to seeking benefits in federal court under Section 502(a)(1)(B), unless the plaintiff can demonstrate that resort to the plan procedure would be futile. Harrow v. Prudential Ins. Co. of America, 279 F.3d 244, 249-51 (3d Cir. 2002); Weldon v. Kraft, 896 F.2d 793, 800 (3d Cir. 1990).

The appeal provisions of UPMC's Short Term Disability Plan are set forth in the Summary Plan Description as follows:

> *Second level appeal* – If you receive an adverse appeal decision from the disability claims administrator, you may appeal directly to the Plan Administrator (UPMC).… You will have up to 180 days to appeal the decision. If you do not make an appeal during this timeframe, you waive your right to appeal which may

---

[3] Because the Court has determined that Plaintiff cannot meet the fourth prong of her failure to accommodate claim, there is no need to address Defendants' argument that Plaintiff has failed to establish a disability under the ADA.

affect your ability to pursue your claim further in court.

(ECF No. 27, Defendants' Concise Statement of Material Facts, ¶ 61). The record evidence in this case reveals that, although Plaintiff was informed of her right to appeal the denial of her claim for short term disability benefits, she elected not to file an appeal. (Id. at ¶¶ 59, 60). Plaintiff does not argue, nor has she produced any evidence to reflect, that exhaustion of the plan appeal process would have been futile. In fact, in her brief in opposition to Defendants' motion for summary judgment [ECF No. 30], Plaintiff does not even address Defendants' argument that she failed to exhaust the plan administrative process before initiating this action.

Because Plaintiff chose not to exhaust the appeal procedures set forth in UPMC's Short Term Disability Plan, as required by Section 502(a)(1)(B) of ERISA, her claim for short term disability benefits fails as a matter of law, thus warranting the entry of summary judgment in favor of Defendants.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ALEDA A. BASS, | ) | |
| --- | --- | --- |
| Plaintiff | ) | C.A. No. 11-308 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| UPMC HORIZON, et al., | ) | |
| Defendants. | ) | |

# ORDER

AND NOW, this 1st day of February, 2013,

IT IS HEREBY ORDERED that Defendants' motion for summary judgment [ECF No. 24] is granted and judgment is hereby entered in favor of Defendants and against Plaintiff on all claims in this case.

The Clerk is directed to mark this case closed.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge